Good morning, Your Honors. Dan Hauser on behalf of the Siena Del Lago Condominium Association. The Siena Del Lago Condominium building is 12 units located in the East Lake neighborhood of Seattle. The original cladding system was an exterior insulation finishing system. It looks like stucco, but it's not stucco. It commonly goes by the acronym of EIFS. And in 2001, the association discovered water intrusion and hidden damage behind the EIFS. So they made a claim to all of their insurers. The insurers came out and investigated, including Mt. Hawley, and found additional hidden damage and that portions of the building were at risk of imminent collapse as of 2011. Was there any coverage from the underlying policies? I believe that all of the underlying policies denied coverage. That's a stupid question. Well, it wasn't ever determined. We alleged that there was coverage. They alleged that there was not coverage. Didn't the district court specifically find that there was coverage under the underlying all-risk policy and therefore couldn't be covered by the differences in conditions DIC coverage? Yes, I would agree with that. That's what the district court found. What's wrong with what Judge Zille did? Well, the most obvious thing that's wrong with what Judge Zille did is that he didn't understand that the difference in conditions policy had an ensuing loss exception to the exclusion for inadequate construction, which preserved coverage for water damage resulting from inadequate construction. One of the underlying policies did not have that exception and, in fact, deleted that exception and replaced it with language that says if the inadequate construction initiates the sequence of events, then any resulting loss is excluded. And so that underlying policy very clearly excluded the sequence of events that Judge Zille found is the sequence of events at issue here. What was the claim that was made for that underlying policy? What claim was made? A tender letter was sent. What was the covered loss that was described? It never got that far. We tendered a claim. But you sent the way the claim that presented to Mount Holly in May was twofold, and as it was characterized in their denial letter, one for damage to exterior wall sheathing and framing caused by rainwater intrusion and two for repair of areas in a state of substantial impairment of structural integrity caused in part by hidden decay and faulty workmanship or construction. That's what you tendered to the insurance company. They denied it, and then later you come up with combined perils theory, and you're asking us to address that now. What happened, Your Honor, is that Washington law has been undergoing some changes regarding coverage for combined perils under first-party policies. This case, the complaint was initially filed in January 2012 before Mount Holly made a coverage decision, before we got Mount Holly's expert report. Then in May 2012, we get Division I decision, which affected a fundamental change in coverage for combined perils. Would you concede that you didn't offer a combined perils theory when you put the letter to the insurance company? That is true, yes. And it also is not, the combined peril theory is not expressed in the original complaint. Right. It was first brought up after we read Division I and after we read Mount Holly's denial letter and their expert's opinion. It was first brought up in an IFCA letter that we sent to Mount Holly in June 2012, one month after the Division I decision, which, again, is the decision which says, if you have an excluded peril that's initiating the loss, the loss can still be covered if there are covered events in the chain. Are you placing the combined perils theory as to the exterior damage claim or to the collapse claim or to both? It has some application to both, but the primary application is to just the water intrusion. Well, I mean, if you never claimed it in the first place, and then, you know, now I'm asking you, what are you? So it seems that this is just something that is being evolving and making up as we go along, and then we're being asked to, you know, address something that was never in the initial, you know, in your initial claim that was presented was never in the complaint, and now you're not clearly articulating it here. Well, I can clearly articulate how the combined peril theory applies to the water intrusion portion of the claim. Inadequate construction is excluded, but there's a resulting loss exception in Mount Holly's policy. That's at ER 376. That preserves coverage for any covered resulting loss, such as water damage from rainwater intrusion. That is the theory that we explained in our IFCA letter. Mount Holly's 30B6 deposition testimony is that they looked at that IFCA letter and looked at Vision 1 and reevaluated coverage and decided that their policy still would not provide coverage for this combined peril theory. So, counsel, just I'm trying to understand what your argument is. So, why wouldn't the underlying policies catch all coverage and lack of exclusion for damage caused by wind-driven rain prevent your prevailing? Why wouldn't that bar your claim? Under the American national policy, there is no the inadequate construction exclusion is going to bar anything that happens after inadequate construction. Even the very typical example that we think of where there's miswiring and then it causes a fire, we normally think of that as being covered because usually there's a resulting loss exception in the inadequate construction exclusion. But if it's not specifically excluded, how do you read the policy as barring it? It is specifically excluded. The policy specifically was amended to say if inadequate construction initiates any sequence of events, then the entire sequence of events is excluded. That is the specific language that was added to the American national policy and that language is going to be effective under the Vision 1 decision to exclude every sequence of covered events that's initiated by inadequate construction. Now, in the absence of that kind of language, we have the Vision 1 case and we also have a very recent Green Lake Condominium Association v. Allstate case, which I gave you in my supplemental letter about a week ago, which says water damage resulting from rainwater intrusion is covered even if it results from inadequate construction. That's because the policy doesn't contain that specific language that says if it's initiated by inadequate construction, anything is excluded. What is the date of that case? December 2015, and that's a U.S. District Court decision that just interprets the Vision 1 case. Published opinion? You know, I'm not honestly sure. It's not on Lexis. It was my case, so I have the opinion and I've provided it to you. Your Honor, we've talked already about the most obvious reason why this decision needs to be reversed, which is the fact that one of the underlying policies clearly excludes coverage and therefore Mount Holly's DIC policy fills that gap in coverage. So could you point me in the record to the underlying policy that you're referring to that clearly excluded coverage? And are you saying it excluded coverage for the combined peril or for the subsequent peril? Your Honor, the underlying policy I'm discussing is the American national policy. It's in the record at ER 52. And what specific policy provision are you referring to? I'm referring specifically to the original version of the policy at ER 56 has a resulting loss exception. But that, you have to look further, though, because that resulting loss exception is crossed out and replaced by an endorsement. The endorsement is at ER 66. The endorsement says I'm replacing the lead-in causation language and I'm replacing the inadequate construction exclusion. If you look at the combined effect of how the endorsement affects the original language in the policy, what American national said in its denial letter is it said it removes the resulting loss exception. The denial letter is in the record at two places, ER 70 to 78 and ER 199 through 207. So if we agree that Mt. Hawley's Exclusion 7A3 provides a sufficient basis for its coverage denial of Sienna's original wind-driven rain and collapse claims, what's your best argument for reversal of the district court's grant of summary judgment for Mt. Hawley? I think the best argument is what I just discussed. But in addition, the problem with the district court's order is it took an extremely ambiguous and broad exclusion, 7A3, and defined it or interpreted it in a way that benefited the insurer, even though we identified at least two different reasonable interpretations of that exclusion that should have been applied. First of all, the language of that exclusion says it applies to other perils as defined and limited in the underlying policies. We said let's look at the dictionary definitions of those terms because they're not defined. We looked at the definition of as. We looked at the definition of defined. We looked at the definition of limited. And particularly, if you look at the definition of defined, a normal person thinks that when you define something, you specifically explain what it means. That's not how Judge Zille interpreted this. He said it doesn't matter whether the underlying policy even mentions it. He cited theft as an example. He said the underlying policy doesn't mention theft. Therefore, I'm interpreting it that theft is a peril defined in the underlying policy. So like you're contesting the dismissal of the IFCA claims too, right? Yes, Your Honor. Okay, but now when I'm reading to the extent that the IFCA claim that is based on the timing or the timeliness of Mount Holly's coverage decision, don't you have a problem in that a violation of Washington's administrative code can serve only as a basis for increasing an award of damages for an otherwise meritorious IFCA claim? I'm referring to Washington Code Section 48.30.015, Subsection 2. IFCA damages, my understanding is that you only get IFCA damages if there was an unreasonable coverage denial. So I'm not here arguing that the mere delay would serve as a basis for IFCA damages. If the policy doesn't provide coverage, I'm not asking for any other damages, bad faith IFCA or otherwise. Okay. I'd like to reserve the remainder of my time for rebuttal, please. Just before you leave class, you're saying that American National excluded the – you didn't answer my question about whether or not you were referring to the exclusion for a single incident or for the combined peril. Are you talking about the combined peril at this point? Okay. Thank you. Counsel? Good morning. Larry Gottlieb on behalf of the Pelley Mount Holly Insurance Company. If it pleases the Court, I'll continue. All right. Thank you. This case is not very complicated. Judge Zille got it right in a number of ways. A loss caused by excluded perils does not result in coverage. The purpose – I'm sorry. For the purpose of summary judgment, Mount Holly accepted as true that the peril was wind-driven rain and also faulty construction. The efficient proximate cause rule only applies if two or more perils combined in a sequence to cause a loss, and a covered peril is the predominant cause of the loss in this particular case because both of the losses were excluded under the Mount Holly DIC policy. We don't apply the efficient proximate cause rule. What we do need to look at is whether those two perils are, in fact, excluded. So we start with wind-driven rain. Wind-driven rain is excluded under the DIC policy because it is a peril insured against under all three of the underlying policies. All three of them cover all risks of loss unless they are excluded under Section C of the policy or limited in Section D limitations. None of the underlying policies exclude wind-driven rain or limit wind-driven rain in any meaningful way for this loss. Because that peril is insured against under more specific insurance, it falls within the language of the catch-all exclusion 7A, and in this case we're referring to Part 3, which is the catch-all part that is trying to, again, exclude any peril that would have been insured against under the required underlying policies. If you had stuck with 7A3 the whole way through, wouldn't this be a little easier? Well, we would think it makes it easier, but we also wanted to respond to the argument that faulty workmanship was a cause. And faulty workmanship is specifically excluded under the DIC policy in Section 7P. Because it's expressly excluded, we don't need to look at the underlying policies for how they resolve or in any way deal with faulty workmanship. At the outset of the claim, because the claim was submitted as a wind-driven rain claim, the denial letter did emphasize 7A3. Again, because wind-driven rain is excluded and it's not covered, and I think that Your Honor makes a point that certainly faulty workmanship could also fall within 7A3. I believe that's part of the question that I'm hearing, but 7P expressly excludes faulty workmanship. Now, counsel referenced ER 376 as a different operable exclusion for faulty workmanship. I do want to point out that all three of the underlying policies exclude loss or damage caused by the peril of faulty workmanship, as does the DIC policy. The reference to the additional exclusion endorsement was dismissed by Judge Zille, and it should be by this Court. Why? Because it expressly says, and I'll point out, Your Honor, that in ER 376, it says right there on the bottom that these are additional exclusions. It adds a number of ones that are new to the policy. It does also add another less limited one for faulty workmanship. Is this the Mount Holly policy you're talking about? Yes, we're talking about the Mount Holly DIC policy, faulty workmanship, but at the bottom it says all other terms and conditions remain unchanged. So we have one exclusion in the policy that my client's relying on that says, we don't cover faulty workmanship unless a collapse ensues. We're not relying on the less stringent exclusion in the additional endorsement because it doesn't change or modify. So the one we're relying on is one, for example, that might say we don't cover losses to all boats. There might be an additional endorsement that says, well, we don't cover losses to blue boats. The blue boat endorsement doesn't suddenly now make yellow boats covered under the policy. It's very clear in the law, and I would refer the court to Transamerica v. PUDUS, Washington case, that ostensibly says unless it replaces that language, that language still applies. May I ask you about opposing counsel's reference to ER 66 and his explanation that this endorsement resulted in a lack of coverage, which then would implicate coverage by Mount Holly. What's your response to that? Well, first of all, my response would be that 3AP does not require that the underlying policies cover the loss. It only requires that we identify that the risk is insured against for it to become an operable exclusion under the Mount Holly policy. And I think his argument is that this means that there is insurance coverage for ‑‑ no, I think he meant that there is no coverage for the sequence of events, his combined peril argument. He's saying that the endorsement on page 66 exempts or disallows coverage for the combination of the perils, and therefore the gap coverage would be initiated. What's your response to that? Well, first of all, Your Honor, my client's not relying on the underlying policy to identify whether the peril of faulty workmanship's excluded. I'm talking about the combination. The combination that may have some effect in the combination as to how the underlying property insurer may or may not determine whether that policy, in fact, covers the loss. What we have here, though, is a peril that's not insured against under the DIC policy, number one. Your argument, just so I understand you, your argument is it's irrelevant how the perils are characterized in the underlying insurance policies. Your client's policies exclude them regardless of how they're labeled. Is that your argument? Yes, absolutely, and that's the best argument. The other argument is it's just not correct. The underlying policy was denied on the basis of faulty workmanship being the sole cause. It sounds a lot like the Vision 1 case, and in fact we're here talking about combined perils. I believe that it's irrelevant to the analysis for the DIC policy at best. It's irrelevant. Is your best argument that if people don't tender that to you in their initial letter, and they don't put it in their complaint, that they can later require you to, you know, since your denial wasn't based on combined perils. Sure. Which it may have, from what you're saying, you would have denied it if he would have said it, but it wasn't based on that. So what's the best argument that if you don't put it in your letter and you don't put it in your complaint that you can't come up with it later? What's the best case for that proposition? Well, I don't, you know, I'd like to say that that's just fundamental waiver, but quite frankly, Your Honor, we did put 7P in the denial. My client did put 7P in the denial letter. We did address it for purposes of summary judgment, and it's really a point in terms of the argument as to how my client addressed the claim and what they were looking at and the sequence in which they addressed these arguments. Quite frankly, it appears to me that the evolving nature of these claims is always somewhat problematic, and it complicates what should have been a very easy denial under a policy intended to cover earthquake losses from October of 1999 to October of 2002. So we're used to being told it's one thing and then another and then some combination, but the analysis for this court is de novo, and it's a very easy analysis because both losses are expressly excluded by the DIC policy. Well, obviously you want us to affirm the judge here. Yes. But what is the most problematic part of the judge's analysis from your perspective? Well, I liked all of it. I think that there was one point where he mentioned faulty workmanship. I think he said initiated a sequence. That probably gave some fodder to the other side arguing about this inverse or converse efficient approximate cause rule. The fact of the matter is that faulty workmanship doesn't make wind-driven rain happen, just like my failure to carry an umbrella doesn't make it rain. Very simple. So I think the only thing I saw that was problematic is faulty workmanship was likely a predominant cause, but that word aside, I thought it was really a very wonderful analysis. This is a case of first impression. There isn't another case out there that deals with the interplay between a DIC policy purchase to cover an earthquake event in a discrete period of time and all the other coverages and all the other cases that have been put into the record about first-party property losses. What did the expert say was the primary cause of the damage? Well, interestingly enough, Mr. Soltner, on behalf of the association, said it was wind-driven rain. Right. So is it your position that wind-driven rain was excluded from the difference in conditions coverage? Yes, Your Honor. And faulty workmanship was excluded from the difference in conditions coverage, and therefore if each one of those separately were excluded, the combination could not be included. Is that pretty much your argument? Yes, Your Honor, because there is no language in the DIC policy that is applicable to combined causes. It just is literally caused by. Our courts have instructed us that when we see the word caused by, we're supposed to think efficient proximate cause. But the efficient proximate cause rule only applies if we're trying to analyze covered and excluded losses. So absolutely, because the DIC policy excludes faulty workmanship and then excludes wind-driven rain, there is no analysis of combined losses that's relevant to this court's determination that there's no coverage here under the earthquake policy. Okay. So can you point us to Washington State Law Authority for the proposition that an IFCA claim must fail when the coverage decision involved a debatable question of coverage? There has not been, to my recollection, a Washington case that has resolved that issue out of our state courts. So the cases that have been evolving in the bad faith arena have all been coming out of the district court, and I don't think we have a binding case. But clearly the statute itself was written, and it was presented as a statute that would only be applicable for an unreasonable denial of coverage. The delay, the other types of regulatory triggers have, as counsel conceded, only been applied as an enhancement once there's been an unreasonable denial. In this case, there's no question this wasn't an unreasonable denial. So the fact that – and we can go to waiver right now, Your Honor. The fact that they're not even suggesting that a delay – and I would say there was no unreasonable delay. I mean, delay itself is not actionable. It would have to be unreasonable. The fact that there's no unreasonable delay here should inform the court that, again, that could not be the basis for a NIFCA claim here. And again, they've waived that argument, and certainly that's not the way the cases have – I'm sorry. There is no controlling law on that issue that would inform the court otherwise. Okay. Thank you. I see that I'm out of time. Again, I would ask the court respectfully to affirm Judge Zille's rulings. Thank you. Thank you, counsel. Your Honors, if you look at ER 369, this is the text of Mount Holly's policy. We see the rain exclusion here, and it's very clear this is exclusion 7R. It only applies to personal property left in the open or not contained in buildings. Mount Holly admits that its policy doesn't exclude rain. Its policy covers rain. The only way it can avoid coverage for rain is under the 783 exclusion. So are you saying that wind-driven rain is not excluded under the difference in conditions policy? It is not excluded. It's covered. And if you look at page 369, you will see that the rain exclusion only applies to personal property. Mount Holly conceded its 30B6 deposition. That doesn't apply. So the rain exclusion does not apply to this loss. Please take a careful look at ER 376. Judge Zille completely missed this second faulty workmanship endorsement in Mount Holly's policy, and it does contain an ensuing loss exception. Is this a faulty workmanship or faulty materials? Either one. All of the above. Oh, no, those are two different things. It includes all of them. Oh, says who? The exact language of the policy. Where does the policy? Oh, I see. Defective design specifications workmanship repair. Yeah, the important point here is the This is an exclusion, though, right? Correct, but it preserves coverage for ensuing losses. So you have to look at whether the ensuing loss is covered, such as a fire or water damage, and you can't turn to the other perils. Before you leave that, it says any ensuing loss not excluded or accepted is covered, right? Yes. So what's the ensuing loss in your view if faulty workmanship is covered? What's the ensuing loss that is covered? Water damage from rainwater intrusion. That is the loss that is covered. That's the Green Lake case as applying Vision 1. I want to point out this ensuing loss exception, I believe counsel is now arguing for the first time that you could look to the other perils exclusion of 7A3 to exclude the ensuing loss, but Judge Zille was clear, that's talking about perils, not losses. So if you're going to distinguish between perils and losses, you've got to be consistent. There's no excluded losses under 7A3, it's only perils. Finally, 15 seconds to talk about collapse coverage. Collapse is a peril. So the commencing condition in the underlying policies limits the peril of collapse. I'm talking about the risk that something would fall down, not the actual falling down. When that happens is restricted under the underlying policies. Mount Holly provides much broader coverage for collapse because there are no temporal restrictions. Thank you very much, Your Honors. Thank you, counsel. Thank you to both counsel, I think. The case just argued and submitted for a decision by the court.
judges: Hawkins, Rawlinson, Callahan